UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRIANA LYN MURPHY,

                             Plaintiff,

v.                                                         6:16-CV-1268
                                                        (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

THE DEHAAN LAW FIRM, P.C.                JOHN W. DEHAAN, ESQ.
  Counsel for Plaintiff
300 Rabro Dr., Ste. 101
Hauppauge, NY 11788

U.S. SOCIAL SECURITY ADMIN.              CATHARINE ZURBRUGG, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  (Dkt. No. 14.)  This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Briana Lyn Murphy ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 10, 13.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born in 1991. (T. 119.) She completed high school. (T. 87.) Generally, Plaintiff's alleged disability consists of seizures and headaches. (T. 90-91.) Her alleged disability onset date is July 1, 2009. (T. 117.)

### B.     Procedural History

Plaintiff received childhood benefits and was notified that she was found no longer disabled as of January 20, 2011 based on a redetermination of disability. (T. 117.) Plaintiff's request for reconsideration was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On July 27, 2012 and October 26, 2012, Plaintiff appeared before the ALJ, Bruce S. Fein. (T. 39-46, 47-67.) On February 7, 2013, ALJ Fein issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 120-139.) On June 17, 2014, the Appeals Council ("AC") granted Plaintiff's request for review, vacated the decision, and remanded the case for further review. (T. 139-142.) Plaintiff appeared at a hearing before ALJ Fein on February 20, 2015. (T. 78-116.) ALJ Fein found Plaintiff not disabled in a decision dated April 15, 2015. (T. 16-38.) On September 6, 2016, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 22-31.) First, the ALJ found that Plaintiff attained age 18 and was found no longer disabled as of January 20, 2001 based on a redetermination of disability. (T. 22.) Second, the ALJ found that Plaintiff had the severe impairments of seizure disorder and borderline intellectual functioning. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 23.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work[1]. (T. 25.) The ALJ found that Plaintiff could not climb ropes, ladders or scaffolds; must avoid moderate exposure to moving machinery, unprotected heights, and hazardous machinery; limited to work involving simple, routine and repetitive tasks performed in a low stress work environment, defined as work with only occasional decision-making, changes in the work setting, and judgment. (*Id.*) Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 29-30.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings[2]. First, Plaintiff argues an evaluation of the medical evidence supports a finding that she meets Listing § 12.05. (Dkt. No. 10 at 18-19 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ improperly concluded her intractable migraine headaches were non-severe at step two. (*Id.* at 19-20.) Third, and lastly, Plaintiff argues the ALJ did not properly evaluate the medical evidence because he failed to follow the treating physician rule. (*Id.* at 20-25.)

### B.  Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ properly determined that Plaintiff did not meet the criteria of Listing § 12.05. (Dkt. No. 13 at 5-11 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ did not commit error in determining that Plaintiff's headaches were not severe. (*Id.* at 11-14.) Third, and lastly, Defendant argues the ALJ properly evaluated the treating physician's opinion. (*Id.* at 14-20.)

## III.  RELEVANT LEGAL STANDARD

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*,

---

[2] Plaintiff is encouraged to review the Northern District of New York Local Rules 10.1 directing that all text must be a minimum of 12 point type and all text in the body of the document be double-spaced. *See* N.D.N.Y. L.R. 10.1(a)(1)-(7)(2017).

4

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV.    ANALYSIS

#### A. Listing § 12.05

A plaintiff will be found disabled if the individual has an impairment or combination of impairments that meets or equals one of the Listings, and meets the duration requirement.  20 C.F.R. § 416.920(d).  The burden is on the plaintiff to present medical findings that his or her impairments match a Listing or are equal in severity to a Listing.  *Davis v. Astrue*, 6:09-CV-0186, 2010 WL 2545961, at *3 (N.D.N.Y. June 3, 2010).  A plaintiff must show that his or her impairment meets or equals all of the specified medical criteria.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (*superseded by statute on other grounds*). If a plaintiff's impairment "manifests only some of those

6

criteria, no matter how severely," the impairment does not qualify. Id. Additionally, while an ALJ "should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment," the absence of an express rationale for an ALJ's conclusions does not prevent a court from upholding them so long as we are "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Berry*, 675 F.2d at 469.

To meet Listing §12.05, Plaintiff must show that she meets or medically equals the following criteria:

> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> OR
> B. A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
> OR
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, Subpart P, App. 1, § 12.05 (2014).

To meet any of the sub-sections of Listing § 12.05, a plaintiff must show that she not only meets the specific requirements of a certain sub-section, but also that she

7

satisfies the diagnostic description of intellectual disability included in the introductory paragraph of Listing § 12.05, namely subaverage general intellectual functioning with deficits in adaptive functioning manifested prior to the age of 22. *See Manni v. Colvin*, No. 15-CV-1140, 2017 WL 1066667, at *3 (N.D.N.Y. Mar. 20, 2017) (quoting *Brothers v. Colvin*, No. 7:16-CV-0100, 2017 WL 530525, at *6 (N.D.N.Y. Feb. 9, 2017)).

The Second Circuit has held that a qualifying IQ score may be prima facie evidence that a plaintiff suffers from "significantly subaverage general intellectual function;" however, Listing § 12.05 also requires the additional finding that a plaintiff has deficits of adaptive functioning. *Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012), *see also Lawler v. Astrue*, 512 F. App'x 108 (2d Cir. 2013) ("In addition to meeting [the IQ score] qualifications, the [plaintiff] must meet a separate burden of showing deficits in adaptive functioning that arise from [his] cognitive limitations.") (internal quotation omitted). Adaptive functioning refers to an individual's "[]ability to cope with the challenges of ordinary everyday life." *Novy v. Astrue,* 497 F.3d 708, 710 (7th Cir. 2007) (observing that "[i]f you cannot cope with those challenges, you are not going to be able to hold down a full-time job"). The Regulations do not require that a plaintiff be "completely helpless," rather, courts consider multiple factors, including "living on one's own, independently caring for children, cooking, paying bills, communication abilities, and daily living skills[.]" *Stephens v. Colvin*, 200 F. Supp. 3d 349, 359-60 (N.D.N.Y. 2016) (citations omitted).

At step three, the ALJ determined that although Plaintiff's IQ scores suggested significantly subaverage intellectual functioning, the evidence of record did not establish that Plaintiff had deficits in adaptive functioning. (T. 24.) The ALJ cited to evidence in

the record that Plaintiff attended regular education classes in high school, attended college, and was able to perform household chores.  (*Id.*)  The ALJ also completed the "special technique" and determined that Plaintiff had mild restrictions in her activities of daily living and social functioning.  (*Id.*)

Plaintiff asserts the ALJ "misconstrued" the medical and educational records to conclude that she did not meet Listing § 12.05 and contends that an "unbiased review" supports a determination that Plaintiff's impairment met the Listing.  (Dkt. No. 10 at 18 [Pl.'s Mem. of Law].)

Plaintiff's argument that the ALJ misconstrued evidence and a review would warrant a finding that she met Listing § 12.05 is not persuasive.  As an initial matter, Listing § 12.05 was revised effective January 17, 2012 and the text quoted in Plaintiff's brief regarding the Listing is from the new version that was not applicable to the ALJ's 2015 decision.  Regardless, under both the current and prior version of the Listing, plaintiff must show significantly subaverage general intellectual functioning and deficits in adaptive functioning.  20 C.F.R. § 404, Subpart P, App. 1, § 12.05 (2014) and (2017).

Plaintiff fails to show how the ALJ misconstrued the evidence in the record and essentially asks the Court to reweigh the evidence before the ALJ.  Plaintiff merely provides citations to the record which she contends supports a finding that she meets Listing § 12.05.  (Dkt. No. 10 at 18 [Pl.'s Mem. of Law].)  When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court "will not reweigh the evidence presented at the administrative hearing, ... nor will it determine whether [the applicant] actually was disabled. [Rather,] [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support

it." *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (citing *White v. Shalala*, 823 F.Supp. 621, 623 (N.D. Ind. 1993)).

Here, substantial evidence supported the ALJ's determination that Plaintiff did not meet the criteria of Listing § 12.05 because she did not have the requisite deficits in adaptive functioning. The ALJ relied on evidence in the record that Plaintiff graduated from high school in regular education classes and attending classes at a community college. (T. 24, *referring to* T. 53, 57-58.) Plaintiff testified that she did homework and helped with household chores such as vacuuming and washing dishes. (*Id.*, *referring to* T. 58.) Plaintiff further testified that she socialized with friends and family. (*Id.*, *referring to* T. 152, 314.)

Therefore, for the reasons stated herein and further outlined in Defendant's brief, substantial evidence supported the ALJ's determination that Plaintiff did not meet the criteria of Listing § 12.05 because she did not have deficits in adaptive functioning. It is recommended that the ALJ's step three determination be upheld.

### B. The ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920(c). The plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.*, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. § 416.912(a). Although the Second Circuit has held that this step is limited to "screen[ing] out *de minimis* claims," *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed

or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013).

Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.' " *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

Plaintiff asserts that had the ALJ "actually taken a moment to properly review the medical evidence . . . he would have been bound to find [Plaintiff's] intractable migraine headaches" a severe impairment. (Dkt. No. 10 at 19 [Pl.'s Mem. of Law].) Any error the ALJ may have made at step two in determining that Plaintiff's headaches were non-sever was harmless because the ALJ fully considered her headaches at step four.

Although the ALJ did not discuss Plaintiff's headaches at step two, in his step four discussion the ALJ thoroughly summarized Plaintiff's complaints and treatment concerning headaches. (T. 28.) The ALJ also discussed the opinion of treating source, Robert Beach, M.D. (*Id.*) Any error in failing to conclude Plaintiff's headaches were severe at step two was harmless because the ALJ found Plaintiff had other severe impairments at step two and proceeded with the sequential process and because the ALJ then discussed Plaintiff's headaches and related symptoms at step four. Therefore, it is recommended that the ALJ's step two determination be upheld.

### C. The ALJ's Weighing of the Medical Evidence

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 416.927(c)[3]. " '[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.' " *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128

---

[3] Effective March 27, 2017, 20 C.F.R. §§ 404.1513, 416.913 has been amended, as have other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

(2d Cir. 2008)).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' " *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *Report and Recommendation adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013)).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129).  "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-130).

      Plaintiff argues the ALJ erred in weighing the opinion of Dr. Beach because the treating physician rule "requires" the ALJ to give more weight to the opinion of a treating source over other medical sources.  (Dkt. No. 10 at 20-21 [Pl.'s Mem. of Law].)  Plaintiff contends that the ALJ failed to follow the factors outlined in the Regulations at 20 C.F.R. § 416.927(c)(2) and instead relied on his own interpretation of the medical treatment records.  (*Id.* at 22.)  Plaintiff also asserts that the reasons given by the ALJ for affording no weight to Dr. Beach's opinion were improper and the ALJ should have recontacted

Dr. Beach for clarification. (*Id.* at 23.) Lastly, Plaintiff argues that the medical opinion evidence provided by consultative examiners should have been afforded minimal weight. (*Id.* at 24.)

Dr. Beach completed a "Headache Residual Functional Capacity Questionnaire" on February 13, 2015. (T. 740-745.) Therein, Dr. Beach opined that he treated Plaintiff twice a year for her seizure disorder and migraines. (T. 740.) He described Plaintiff's headaches as a constant stabbing pain in her temples, eyes, and back of head. (*Id.*) Dr. Beach stated her headaches causes nausea and mental confusion/inability to concentrate. (T. 741.) He stated she had migraines three to four times a week lasting for hours to days at a time. (*Id.*) Dr. Beach indicated her headaches were made worse by bright lights and noise. (*Id.*) Dr. Beach indicated her headaches were relieved by lying in a dark room, pressure/massage, and cold/hot packs. (T. 742.) He opined her headaches would preclude her from performing basic work activities, she would require unscheduled breaks, she was incapable of low stress jobs, she would have good days and bad days, and she would miss more than four work days per month. (T. 742-744.)

The ALJ gave Dr. Beach's statement no evidentiary weight. (T. 28.) The ALJ stated that although Dr. Beach treated Plaintiff for years, his treatment records did not support his opinion regarding unscheduled breaks, performance of low stress work, or absence from the workplace. (*Id.*) The ALJ further stated that the limitations imposed by Dr. Beach were made in 2015 and would not apply to her disability as of 2011. (*Id.*) Lastly, the ALJ stated that Dr. Beach provided his opinion a week before the hearing and was prepared for use by the representative in support of Plaintiff's attempt to obtain benefits. (*Id.*)

As outlined herein, an ALJ is not required to give a treating source's opinion controlling weight if the opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques and inconsistent with other substantial evidence in the record.  Plaintiff contends the ALJ failed to apply the treating physician rule because he did not consider the factors set forth in 20 C.F.R. § 416.927(c)(2); however, the evidence cited within the ALJ's decision, as well as the text of the decision itself, reflects that the ALJ considered the factors.  Where an ALJ's reasoning and adherence to the Regulations is clear, he is not required to explicitly go through each and every factor of the Regulation.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Here, the ALJ considered the frequency, length, nature and extent of treatment and the lack medical evidence supporting Dr. Beach's opinion.  (T. 28.)  The ALJ outlined Dr. Beach's treatment of Plaintiff and his medical opinion.  (T. 26, 28.)  Therefore, the ALJ properly applied the treating physician rule.

Plaintiff asserts that in concluding Dr. Beach's opinions were inconsistent with his treatment notations the ALJ improperly substituted his own review of Dr. Beach's medical records for that of the doctor.  (Dkt. No. 10 at 22 [Pl.'s Mem. of Law].)  The Regulations allow the ALJ to give less weight to medical opinions if they are not supported by medically acceptable laboratory diagnostic techniques and inconsistent with other substantial evidence in the record.  Such is the case here.  20 C.F.R. § 416.927(c)(2); *see also Monroe v. Comm'r of Soc. Security*, 676 F. App'x 5 (2d Cir.

2017) (giving deference to the ALJ's rejection of a treating physician's opinion where the physician's opinion was contrary to his own treatment notes and noting that the ALJ properly explained his reasons for rejecting the opinion); *cf. Gavazzi v. Berryhill*, 687 F. App'x 98 (2d Cir. 2017) (remanding the case to the SSA where the ALJ failed to explain his reasons for rejecting parts of the treating physician's opinion and simply stated that there was no clinical evidence to support the opinion and that parts of the opinion were not supported by the treatment notes).

  The ALJ specifically rejected Dr. Beach's opinion concerning unscheduled breaks, performance of low stress work, and absences from the workplace because his records did not show any test results or observations which would support such limitations. (T. 28.) In February of 2011, Plaintiff complained of daily headaches and reported taking ibuprofen twice a day which "usually" helped, as did sleep. (T. 606.) In August of 2011, Plaintiff reported that her headaches improved since her last visit and she was not taking as much ibuprofen. (T. 605.) Treatment notations from February of 2012, indicated that Plaintiff had a headache after a breakthrough seizure. (T. 601.) Plaintiff made no complaints of headaches during her February 2012 visit. (T. 601-603.)

  Remand may be appropriate in situations where a treating source opinion regarding a plaintiff's rate of absenteeism or need for unscheduled breaks is not inconsistent with medical and other evidence in the record. However, in the present case, other medical source opinions in the record supported the ALJ's RFC determination that Plaintiff could perform work on a full time sustained basis. As indicated by the ALJ, in formulating his RFC determination he relied on treating source

notations, the opinion of Verna Yu, M.D., the opinion of Martha Totin, Ph.D., and the opinion of Thomas Andrews, Ph.D. (T. 28.)[4]

Dr. Andrews reviewed Plaintiff's record on January 7, 2001. (T. 453.) Overall, Dr. Andrews opined that Plaintiff was not significantly limited in her ability to perform simple, routine, repetitive work. (T. 453-454.) He opined that Plaintiff had, at most, moderate limitations in her ability to perform complex tasks, interact appropriately with the general public, and in adaptation. (*Id.*) He specifically opined Plaintiff could maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; and sustain an ordinary routine without special supervision. (T. 453.) Dr. Yu reviewed the record on January 11, 2011 and opined Plaintiff had no exertional limitations. (T. 472.) Dr. Totin reviewed the record on April 14, 2011, and opined Plaintiff had mild limitations in activities of daily living, moderate limitations in maintaining social functioning and maintaining concentration, persistence or pace. (T. 505.)

Plaintiff asserts that because Drs. Yu and Totin never examined Plaintiff their opinions should have been given minimal weight. (Dkt. No. 10 at 24 [Pl.'s Mem. of Law].) However, it is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 416.912(b)(6), 416.913(c), 416.927(e); *see Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010). While medical source opinions that are "conclusory, stale, and based on an incomplete medical record" may not be substantial

---

[4] Of note, Plaintiff does not argue that the ALJ erred in his physical RFC determination that Plaintiff could perform the exertional demands of light work.

evidence to support an ALJ finding, *Griffith v. Astrue,* No. 08-CV-6004, 2009 WL 909630, at *9 n. 9 (W.D.N.Y. March 31, 2009), this is not true where such opinions are supported by substantially similar findings in treatment notes and other opinions in the record, *Camille v. Colvin,* 104 F. Supp. 3d 329, 343-344 (W.D.N.Y. May 19, 2015). Although Drs. Yu and Totin did not review the full medical record, treatment notations provided after their review contained substantially similar findings as those reviewed by the doctors and did not indicate Plaintiff's condition worsened; therefore, the additional records would not have altered their opinions.

Plaintiff also argues that the ALJ improperly considered the fact that Dr. Beach's opinion was prepared in preparation for her disability hearing and that it reflected Plaintiff's statements in 2015, which the ALJ said was not probative of her condition as of December 2011. (Dkt. No. 10 at 22-23 [Pl.'s Mem. of Law].) The ALJ properly noted the timing of the Dr. Beach's statement. Dr. Beach completed the questionnaire on February 13, 2015. (T. 745.) Plaintiff's cessation of disability was determined nearly four years prior on January 20, 2011. (T. 117.) The questionnaire completed by Dr. Beach in 2015 did not contain any notation indicating that the limitations contained therein were retrospective to 2011. *See Martin v. Colvin*, No. 7:14-CV-1115 (DNH), 2016 WL 1383507, at *5 (N.D.N.Y. Apr. 7, 2016), *appeal dismissed* (Sept. 15, 2016) ("the ALJ concluded that the later evidence submitted in this case did not, in fact, demonstrate that [plaintiff's] condition during the time period at issue here was of greater severity than the then-extant medical record had previously indicated").

In addition, as stated by Defendant, Plaintiff's argument is immaterial insofar as the ALJ's accurate explanation that objective evidence did not support Dr. Beach's

18

opinion was a sufficient basis for him to reject the opinion. (Dkt. No. 12 at 15-16 [Def.'s Mem. of Law].) Further, the ALJ was entitled to consider these factors in his overall analysis of Dr. Beach's opinion. For example, an ALJ may provide less weight to a doctor's opinion because it was based largely upon the subjective statements of a plaintiff, who the ALJ had reasonably be less than fully credible. *Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012).

Lastly, the ALJ did not err in failing to seek clarification from Dr. Beach. While the ALJ has a general duty to develop the record, the agency is required to affirmatively seek out additional evidence only where there are "obvious gaps" in the record. *Abbott v. Colvin*, 586 F. App'x 21 (2d Cir. 2015); *see Eusepi v. Colvin*, 595 F. App'x 7 (2d Cir. 2014).

Therefore, for the reasons stated herein and further outlined in Defendant's brief, the ALJ properly determined Plaintiff did not meet the criteria for Listing 12.05, any error made by the ALJ at step two was harmless, and the ALJ properly evaluated Dr. Beach's opinion. It is recommended that the ALJ's determination be upheld.

**ACCORDINGLY,** based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED**.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: October 24, 2017

                                            */s/ Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge